# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

<table>
<tr><td>IN RE ALLERGAN, INC.<br>STOCKHOLDER LITIGATION</td><td>Consolidated<br>C.A. No. 9609-CB</td></tr>
</table>

## MEMORANDUM OPINION

Date Submitted: August 14, 2014
Date Decided: November 7, 2014

Stuart M. Grant, Michael J. Barry, Aaron W. Stewart and Bernard C. Devieux of GRANT & EISENHOFER, P.A., Wilmington, Delaware; Mark Lebovitch, David L. Wales and Edward G. Timlin of BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, New York; *Co-Lead Counsel for Co-Lead Plaintiffs*.

Brian J. Robbins, Stephen J. Oddo, Edward B. Gerard and Justin D. Rieger of ROBBINS ARROYO LLP, San Diego, California; *Additional Counsel for The Police Retirement System of St. Louis*.

Lisa A. Schmidt, Raymond J. DiCamillo, Susan M. Hannigan and Rachel E. Horn of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Peter A. Wald of LATHAM & WATKINS LLP, San Francisco, California; Blair G. Connelly and Virginia F. Tent of LATHAM & WATKINS LLP, New York, New York; Michele D. Johnson and Kristin N. Murphy of LATHAM & WATKINS LLP, Costa Mesa, California; William Savitt and Bradley R. Wilson of WACHTELL, LIPTON, ROSEN & KATZ, New York, New York; *Counsel for Defendants*.

**BOUCHARD, C.**

## I.    INTRODUCTION

Last April, Valeant Pharmaceuticals International, Inc. ("Valeant") publicly disclosed its interest in acquiring Allergan, Inc. ("Allergan") in a merger transaction. Pershing Square Capital Management, L.P. ("Pershing Square"), a well-known hedge fund, has been working with Valeant as a co-bidder to consummate such a transaction. In furtherance of their efforts, PS Fund 1, LLC ("PS Fund 1"), a joint entity created by Pershing Square and Valeant that has acquired a significant position in Allergan, filed two separate lawsuits in this Court seeking judicial declarations in aid of their desire to run a proxy contest against the Allergan board of directors. Following preliminary hearings, the parties settled both cases. PS Fund 1 currently is soliciting proxies to remove six of the nine members of the Allergan board at a special meeting of Allergan's stockholders scheduled for December 18, 2014.

In this action, stockholders of Allergan who have been monitoring these events believe that a better strategy for Pershing Square and Valeant – one they have chosen ***not*** to pursue – would be to remove and replace the entire Allergan board at the same special meeting of stockholders. This strategy implicates a provision found in Allergan's certificate of incorporation and its Bylaws known as the "Similar Item" provision. In a supplemental proxy statement issued earlier this year (the "Supplemental Proxy"), Allergan stated that the Similar Item provision would permit stockholders to ***remove*** directors by written consent (and presumably at a special meeting) but not to ***elect*** their

successors by written consent if an election of directors had occurred within one year of the Company's receipt of a request to take action by written consent.[1]

Presently before the Court is plaintiffs' motion for partial summary judgment on the first two of the five claims in their consolidated complaint. Plaintiffs seek (1) a declaration that the Similar Item provision would not prohibit the stockholders of Allergan from removing the entire board at a special meeting and simultaneously electing at the same special meeting a new slate of individuals to replace them as long as those same individuals had not been up for election by the Allergan stockholders within the preceding year, and (2) entry of a judgment that the directors of Allergan breached their fiduciary duties in connection with the issuance of the Supplemental Proxy by falsely characterizing the meaning of the Similar Item provision.

For the reasons explained below, I conclude that plaintiffs' request for declaratory relief seeks an advisory opinion concerning a hypothetical proxy strategy that is not ripe for review. I also conclude that plaintiffs, who have not taken discovery and have not presented a factual record concerning the circumstances surrounding the issuance of the Supplemental Proxy, have failed to establish that the Allergan board breached its fiduciary duties. Accordingly, plaintiffs' motion for summary judgment is denied.

---

[1] The vacancies created by the removal of directors instead could be filled in another manner. For example, the remaining director(s) on Allergan's board could appoint successor directors under Article 8 of its Certificate (discussed below) or the Court could summarily order an election to fill the vacancies in certain circumstances specified in 8 *Del. C.* § 223.

## II. BACKGROUND[2]

### A. The Parties

Plaintiffs City of Westland Police & Fire Retirement System, City of Riviera Beach Police Officers Pension Fund and The Police Retirement System of St. Louis have been stockholders of Allergan at all relevant times.

Defendant Allergan, a Delaware corporation, is a multi-specialty healthcare company focused on developing and commercializing pharmaceuticals, biologics, medical devices and over-the-counter products. Allergan develops and commercializes a wide range of products for the ophthalmic, neurological, medical aesthetics, medical dermatology, breast aesthetics, urological, and other specialty markets in more than 100 countries around the world. Allergan was founded in 1950 and is listed under the symbol "AGN" on the New York Stock Exchange.

Defendants David E.I. Pyott, Michael R. Gallagher, Deborah Dunsire, Trevor M. Jones, Louis J. Lavigne, Jr., Peter J. McDonnell, Timothy D. Proctor, Russell T. Ray, and Henri A. Termeer were the nine members of Allergan's board of directors in April 2014, when the Supplemental Proxy was issued.

### B. Allergan Amends its Certificate and Bylaws to Permit Special Meetings of Stockholders and Action by Written Consent

Before 2013, Allergan's certificate of incorporation ("Certificate") did not permit the calling of special meetings of stockholders or the taking of action by written consent.

---

[2] The facts recited herein are based on the allegations of the consolidated complaint and the parties' submissions in connection with plaintiffs' motion for summary judgment.

3

On March 8, 2013, in connection with Allergan's annual stockholder meeting scheduled for April 30, 2013, Allergan filed a definitive proxy statement with the Securities and Exchange Commission ("SEC") that included a proposal to amend its Certificate to allow stockholders to call special meetings of stockholders upon the written request of stockholders holding 25% of Allergan's outstanding shares of common stock.[3] The proxy statement disclosed that if stockholders approved this amendment to the Certificate, Allergan's Bylaws also would be amended.[4] The proposed amendment to the Bylaws contained, in relevant part, a "Similar Item" provision. It provided that special meeting requests would not be permitted if "an identical or substantially similar item" to that included in the special meeting request had been presented at a stockholder meeting during the previous year:

> (1) The Secretary shall not accept, and shall consider ineffective, a Special Meeting Request if . . . (c) an identical or substantially similar item (a "Similar Item") to that included in the Special Meeting Request was presented at any meeting of stockholders held within one year prior to receipt by the Corporation of such Special Meeting Request.[5]

In response to Allergan's proxy statement, Institutional Shareholder Services Inc. ("ISS") issued a report addressing the special meeting proposal. ISS noted that the Similar Item provision could make it difficult for stockholders to elect directors at a special meeting:

---

[3] Allergan, Inc., Definitive Proxy Statement (Schedule 14A) 16-17 (Mar. 8, 2013) (the "2013 Proxy") (Defs.' Br. in Opp. to Pls.' Mot. for Summ. J. Horn Aff. Ex. B at 16-17).

[4] 2013 Proxy at 16.

[5] 2013 Proxy at B-3 (§ 3(B)(1)(c)).

> [T]he restriction limiting the type of business that may be covered to those items not covered at an annual or special meeting within the last year could make it difficult for shareholders to bring matters to a special meeting that are generally routine items on an annual meeting agenda, such as director elections.[6]

Nonetheless, ISS recommended that Allergan stockholders approve the proposal,[7] which they did at the April 30, 2013 annual meeting.[8]

One year later, in connection with Allergan's annual meeting of stockholders scheduled for May 6, 2014, the Allergan board recommended that stockholders approve an amendment and restatement of Allergan's Certificate that would allow stockholders to act by written consent if holders of at least 25% of the outstanding shares support the request (the "Written Consent Amendment").[9] As with the prior year's proposal to allow stockholders to call special meetings, the proposed amendment to permit actions by written consent contained a Similar Item provision. It stated that stockholders would not be permitted to act by written consent if, among other things, "an identical or substantially similar item" was presented at a stockholder meeting in the previous year.[10]

On April 19, 2014, ISS again weighed in on the proposed amendment. Consistent with its statements about the prior year's amendment regarding special meetings, ISS

---

[6] Defs.' Br. in Opp. to Pls.' Mot. for Summ. J. Maletta Aff. Ex. A at 21 (2013 ISS report addressing, *inter alia*, Allergan's special meeting proposal).

[7] *Id*. at 22.

[8] Consol. Compl. ¶ 53.

[9] Allergan, Inc., Definitive Proxy Statement (Schedule 14A) 16-17 (Mar. 26, 2014) (the "2014 Proxy") (Defs.' Br. in Opp. to Pls.' Mot. for Summ. J. Horn Aff. Ex. C at 16-17).

[10] 2014 Proxy at A-3 (Art. 9(c)(iii)).

stated that the "restriction limiting the type of business that may be covered to those items not covered at an annual or special meeting within the last year could make it difficult for shareholders to act by written consent on matters that are generally routine items on an annual meeting agenda, such as director elections."[11]  ISS recommended that stockholders approve the Written Consent Amendment, but that stockholders vote against certain directors.[12]

On April 21, 2014, Allergan emailed ISS to see if it could discuss ISS's preliminary proxy analysis.[13]  Later that day, Allergan sent its initial comments to ISS, noting that "the protective provisions in Allergan's proposed written consent provisions to the Charter and Bylaws generally track the special meeting proposal implemented by Allergan in 2013."[14]  According to defendants, Allergan knew then – before Valeant and Pershing Square disclosed they had entered a co-bidding arrangement – that it would need to submit a supplemental proxy disclosure to convince ISS to alter its preliminary recommendation because ISS's published guidelines state that ISS will only consider publicly available information when formulating its voting recommendations.[15]

---

[11] Defs.' Br. in Opp. to Pls.' Mot. for Summ. J. Maletta Aff. Ex. B at Key Takeaways 22 (2014 ISS report addressing, *inter alia*, Allergan's proposed Written Consent Amendment).

[12] *Id*. at 1, 22.

[13] *See* Defs.' Br. in Opp. to Pls.' Mot. for Summ. J. Maletta Aff. Ex. C (Apr. 21, 2014, email from Allergan to ISS requesting more time to respond to ISS's preliminary review).

[14] Defs.' Br. in Opp. to Pls.' Mot. for Summ. J. Maletta Aff. Ex. D (Apr. 21, 2014, email from Allergan to ISS setting forth initial comments on ISS's preliminary review).

[15] Def.'s Br. in Opp. to Pls.' Mot. for Summ. J. at 14.

At approximately 5 p.m. (EDT) on April 21, 2014, Pershing Square and Valeant filed Schedule 13Ds with the SEC disclosing that they had entered into a co-bidder Agreement in February 2014 and had accumulated a 9.7% beneficial ownership stake in Allergan.[16]   Several hours later, at 10:30 p.m. (EDT), Allergan sent ISS a draft of a supplemental proxy statement it had prepared in response to ISS's comments.  The draft supplement stated that the "Similar Item" provision would permit stockholders to remove directors by written consent but would not permit stockholders to elect directors by written consent.[17]

On April 22, 2014, Valeant delivered to Allergan a letter proposing a merger of the two companies.  Later that day, at a previously scheduled Board meeting, Allergan's board adopted a stockholder rights plan with a 10% trigger.

Also on April 22, 2014, Allergan filed with the SEC the supplemental proxy statement it had sent to ISS in draft form the previous day (as defined above, the "Supplemental Proxy").  Regarding the Similar Item provision contained in the Written Consent Amendment, the Supplemental Proxy stated the following:

> With consideration given to the direct input from stockholders, the Board has proposed a procedural protection whereby stockholders are not entitled to act by written consent if an identical or similar item ("Similar Item") has been presented at any meeting of stockholders held within one year of the Company's receipt of such request.  This protection is included to prevent the corporate waste caused by the serial submission of matters that have recently been decided by a vote of stockholders.  To clarify the breadth of Similar Items, by way of example, the election of directors by written

[16] *See* Allergan, Inc., Beneficial Ownership Report (Schedule 13D) (Apr. 21, 2014).

[17] Defs.' Br. in Opp. to Pls.' Mot. for Summ. J. Maletta Aff. Ex. E.

consent would be a Similar Item; however, the removal of directors by written consent would not be a Similar Item.[18]

On May 6, 2014, Allergan stockholders approved the Written Consent Amendment.[19]

### C. Procedural History and Developments in Valeant's Pursuit of Allergan

On May 5, 2014, the City of Westland Police & Fire Retirement System filed the initial complaint in this action against Allergan and the nine members of its board. The initial complaint focused on Valeant's proposal to acquire Allergan. It asserted that "[s]hould the Board respond to this offer in a way that a majority of the stockholders disagree with, the stockholders may well wish to replace all or a majority of the Board" and that "[t]he quickest way to do so would be to act by written consent."[20]

To this end, the initial complaint asserted three claims. Count I sought a declaration that the Written Consent Amendment "entitle[d] Allergan stockholders to remove a majority of the members of the Board by acting through written consent, and thereafter seek an order of this Court compelling an election pursuant to 8 *Del. C.* § 223(c)."[21] Count II sought a declaration that "the 'Similar Item' exception in the [Written Consent] Amendment would not prohibit the election of directors by stockholders through written consent so long as such directors were not also nominees for

---

[18] Pls.' Op. Br. in Supp. of Mot. for Summ. J. Ex. C at 2 (Supplemental Proxy).

[19] Consol. Compl. ¶ 39.

[20] Compl. ¶ 33.

[21] Compl. ¶ 50.

election at a stockholder meeting within the preceding year."[22] Count III asserted a claim for breach of fiduciary duty against the Allergan board for making "false and misleading" statements concerning the Allergan stockholders' rights to elect directors through written consent.[23]

On May 14, 2014, plaintiffs moved the Court for a speedy hearing on the merits of their complaint. On May 20, 2014, I denied the motion, finding that expedition was not warranted for lack of a showing of irreparable harm because stockholders holding 25% of Allergan's shares had not sought to take action by written consent. I further explained that I was "confident that any group of shareholders that can muster 25 percent of the vote won't be deterred from seeking an interpretation" of the Written Consent Amendment if "that event comes to pass."[24]

On June 2, 2014, PS Fund 1 filed preliminary proxy materials with the SEC for the purpose of calling a special meeting of Allergan's stockholders to, among other things, remove six of the nine members of Allergan's board of directors and request that the Allergan board engage in good faith discussions with Valeant regarding its proposal to merge with Allergan.

On June 6, 2014, Pershing Square sent a letter to Allergan's board seeking assurances that certain interactions with other Allergan stockholders relating to its efforts to call a special meeting of stockholders would not be deemed to trigger Allergan's

---

[22] Compl. ¶ 58.

[23] Compl. ¶¶ 60-67.

[24] Oral Argument Tr. 36 (May 20, 2014).

9

stockholder rights plan. On June 12, 2014, unsatisfied with Allergan's response, PS Fund 1 filed a lawsuit against Allergan seeking various forms of declaratory relief in aid of its efforts to call a special meeting of stockholders.[25] That case settled and was dismissed on June 28, 2014.

On June 17, 2014, after Westland's case had been consolidated with two others,[26] plaintiffs filed a consolidated complaint once again supporting Valeant's efforts to acquire Allergan,[27] but focusing on a different strategy than Pershing Square and Valeant were pursuing in their takeover efforts, *i.e.*, removal of the ***entire*** Allergan board of directors rather than a majority of the board. According to plaintiffs, stockholders and commentators had recognized that "pursuing a full-board strategy is significantly more advantageous when compared to a partial-board strategy" because a partial-board strategy "cannot disable" Article 8 of Allergan's Certificate.[28] Article 8 states that vacancies resulting from the removal of any directors "shall be filled ***solely*** by the affirmative vote of a majority of the remaining directors then in office, even though less than a quorum, or by a sole remaining director."[29]

---

[25] *See PS Fund 1, LLC v. Allergan, Inc.*, C.A. No. 9760-CB.

[26] On June 13, 2014, the Westland action was consolidated with two related, later-filed actions (C.A. Nos. 9675 and 9699).

[27] *See* Consol. Compl. ¶¶ 41-44, 57-69, 106-13.

[28] Consol. Compl. ¶ 50.

[29] Pls.' Mot. for Summ. J. Ex. A Art. 8 (Amended and Restated Certificate of Incorporation of Allergan, Inc.) (emphasis added). As plaintiffs' able counsel later acknowledged, Article 8 of the Certificate presented a roadblock to certain of plaintiffs'

10

The consolidated complaint contains five counts. Count I requests a declaratory judgment that "the 'Similar Item Limitation' would not prohibit the election of directors at a single special meeting designed to remove the incumbent board and replace it with nominees suggested by stockholders, so long as such nominees had not previously been up for election by the Allergan stockholders within the preceding year."[30] Count II asserts that the Allergan directors breached their fiduciary "duty of candor" by "stating that stockholders would not have the right to *replace* removed directors at a special meeting."[31] Count III seeks a declaration that Allergan's rights plan will not be triggered if a stockholder assists other stockholders in preparing a Special Meeting Request form.[32] Count IV seeks a declaration that defendants are obligated "to apprise stockholders of their rights under DGCL § 223(c)" to request that the Court of Chancery summarily order an election in the event that the majority of the Allegan board is removed.[33] Count V seeks a declaration that the Allergan board is obligated to consider only the maximization of stockholder value in responding to or seeking out takeover proposals.

initial claims seeking declarations concerning the removal of less than all of the members of Allergan's board of directors. Oral Argument Tr. 23 (July 23, 2014).

[30] Consol. Compl. ¶ 128.

[31] Consol. Compl. ¶ 133.

[32] Specifically, plaintiffs requested "that the Court declare . . . that Allergan's Poison Pill is invalid and enjoin its application" to the extent that Allergan's stockholder rights plan would be triggered if a stockholder assists other stockholders in preparing a Special Meeting request form. Consol. Compl. ¶ 141. PS Fund 1 litigated this issue in a separate action (C.A. 9760-CB) and it is now moot.

[33] Consol. Compl. ¶ 145.

On June 18, 2014, plaintiffs moved for partial summary judgment on Counts I and II of the consolidated complaint. On July 23, 2014, I heard argument on plaintiffs' motion for summary judgment and *sua sponte* questioned the ripeness of plaintiffs' claims.[34] At the conclusion of argument, I requested supplemental briefing on the issue of ripeness and the analytical framework for deciding Count II, the fiduciary duty claim, which the parties had barely addressed in their briefing. The supplemental briefing was completed on August 14. Plaintiffs made additional supplemental filings on August 26 and October 30.

On August 22, 2014, PS Fund 1 commenced another lawsuit against Allergan after PS Fund 1 had delivered written requests for a special meeting from stockholders owning more than 25% of outstanding Allergan common stock for the purpose of, among other things, removing six of the nine Allergan directors.[35] PS Fund 1 sought a declaration that the requesting stockholders had validly requested a special meeting under the Certificate and that, to the extent the written requests did not comply with certain aspects of Allergan's Bylaws, those provisions of the Bylaws were invalid. PS Fund 1 also sought an order requiring Allergan to call a special meeting as soon as reasonably possible. On September 15, 2014, the parties stipulated that the special meeting requests submitted by

---

[34] *See Bebchuk v. CA, Inc.*, 902 A.2d 737, 740 (Del. Ch. 2006) ("Ripeness, the simple question of whether a suit has been brought at the correct time, goes to the very heart of whether a court has subject matter jurisdiction. As such, the court has a positive duty to raise this issue on its own motion, even if neither party objects to the court's exercise of power over the case.").

[35] *See PS Fund 1, LLC v. Allergan, Inc.*, C.A. No. 10057-CB.

PS Fund 1 were valid and that Allergan would hold a special meeting on December 18, 2014.

## III. ANALYSIS

In order to prevail on a motion for summary judgment, the moving party must show that no material facts are in dispute and that they are entitled to judgment as a matter of law.[36] In determining whether this burden is met, I must view the facts in the light most favorable to the non-moving party.[37] Summary judgment may be denied if an action is not ripe.[38]

### A. Count I: Declaratory Relief

#### 1. Legal Standard

Under 10 *Del. C.* § 6501, Delaware courts are authorized to entertain declaratory judgment actions provided that an "actual controversy" exists between the parties.[39] For an "actual controversy" to exist, four prerequisites must be satisfied:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[40]

---

[36] Ct. Ch. R. 56 (c).

[37] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009).

[38] *See Kingsbridge Capital Gp. V. Dunkin' Donuts Inc.*, 1989 WL 89449 (Del. Ch. Aug. 7, 1989) (denying summary judgment motion for lack of ripeness).

[39] *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479 (Del. 1989).

[40] *Id.* at 479-80 (citation omitted).

In deciding whether an action is ripe for declaratory judgment, the benefits to be derived from issuing a declaratory judgment must be weighed against the court's desire to avoid advisory opinions.[41] As former Chief Justice Steele, then a Vice Chancellor, explained:

> Advisory opinions ill-serve the judicial branch and the public by expending resources to decide issues that may never come to pass. More importantly, the judiciary's role in the lawmaking process is an interstitial one, carried out by the application of legislative enactments and common law principles to concrete factual circumstances that have created real and present controversies. An action seeking declaratory relief is not exempt from these requirements and must present the court with an actual controversy that is ripe for judicial decision. The dispute between the parties, therefore, must be actual, not hypothetical.[42]

More recently, the Delaware Supreme Court explained the "common sense assessment" the Court must undertake in determining whether a case is ripe for judicial review as follows:

> A ripeness determination requires a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court "in postponing review until the question arises in some more concrete and final form." Generally, a dispute will be deemed ripe if "litigation sooner or later appears to be unavoidable and where the material facts are static." Conversely, a dispute will be deemed not ripe where the claim is based on "uncertain and contingent events" that may not occur, or where "future events may obviate the need" for judicial intervention.[43]

---

[41] *See Siegman v. Tri-Star Pictures, Inc.*, 1989 WL 48746, at *4 (Del. Ch. May 5, 1989) ("Applying those criteria, and weighing the reasons for not rendering a hypothetical opinion against the benefits to be derived from a declaratory judgment . . . .").

[42] *KLM Royal Dutch Airlines v. Checchi*, 698 A.2d 380, 382 (Del. Ch. 1997).

[43] *XI Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014) (citations omitted).

14

## 2.      Count I is Not Ripe for Judicial Determination

Count I of the consolidated complaint does not challenge the facial validity of any provision of Allergan's Certificate or Bylaws.  Plaintiffs instead advance what is essentially a claim of contractual construction concerning the meaning of the Similar Item provision as it might apply in a hypothetical situation.  Specifically, Count I seeks a declaration that the Similar Item provision would not prohibit the stockholders of Allergan from removing the entire board of Allergan at a special meeting and simultaneously electing at the same special meeting a new slate of individuals to replace them as long as those individuals had not been up for election by the Allergan stockholders within the preceding year.  In my opinion, this is a classic example of a request for an advisory opinion that is not ripe, and many never become ripe, for judicial review.

As plaintiffs acknowledge, "no stockholder is currently pursuing" the strategy of removing the entire Allergan board.[44]  To the contrary, in aid of their efforts to facilitate a merger of Valeant and Allergan, Valeant and Pershing Square are currently pursuing a different strategy to remove six of the nine members of Allergan's board of directors at a special meeting scheduled for December 18, 2014, and to replace them with six of their own nominees.

Significantly, if Valeant and Pershing Square are successful in their efforts and a new board majority is installed at Allergan, the hypothetical espoused by the plaintiffs

---

[44] Pls.' Supplemental Op.  Br. in Supp. of Mot. for Summ. J. at 5.

15

presumably would never arise. Even if Valeant and Pershing Square are not successful, no stockholder may ever pursue plaintiffs' suggested strategy and thus the issue still may never need to be resolved. In short, plaintiffs' request for declaratory relief amounts to a purely hypothetical question.

Despite the hypothetical nature of Count I, plaintiffs argue that the claim is ripe for adjudication because "Defendants' incorrect public interpretation is currently impeding stockholders' understanding of and discouraging their ability to exercise their rights to call a special meeting."[45] According to plaintiffs, "Delaware courts . . . regularly recognize that restrictions to stockholders' rights to act under governing documents are ripe, even if there is no vote pending."[46]

In support of this proposition, plaintiffs cite several decisions in which this Court has found ripe for review challenges to the implementation of stockholder rights plans and proxy put provisions.[47] In each of these cases, the key consideration to the Court's finding of a ripe controversy was the present effect the provisions in question were deemed to have on stockholders because of their deterrent features.

---

[45] *Id*. at 3.

[46] *Id*.

[47] The term "proxy put" is generally used to describe a right given to noteholders to accelerate repayment of their debt if stockholders remove and replace the majority of a corporation's board without the approval of the ousted incumbents. *See Kallick v. Sandridge Energy, Inc.*, 68 A.3d 242, 244 n.8 (Del. Ch. 2013).

In *Moran v. Household International, Inc.*, for example, plaintiffs contested the "present effect" that Household's implementation of a stockholder rights plan was having on "their entitlement to receive and consider takeover proposals and to engage in a proxy fight for control of Household."[48] In finding plaintiffs' challenge to the validity of the stockholders rights plan ripe for review, the Court reasoned that "the plaintiffs here are seeking a declaration that the Rights Plan, *because of its deterrent features*, presently affects shareholders' fundamental rights and is illegal under Delaware law."[49]

In *KLM Royal Dutch Airlines v. Checchi*,[50] the Court deemed ripe a challenge to a corporation's implementation of a rights plan where a stockholder had a pre-existing option to purchase shares of the corporation in the future that, if exercised, would trigger the rights plan. Citing *Moran*, the Court found that the "poison pill presently interferes with [the stockholder's] contractual rights to exercise the option in the future."[51] One year later, in *Carmody v. Toll Brothers, Inc.*,[52] the Court found a claim challenging the validity of a dead-hand provision in a stockholder rights plan to be ripe based on the reasoning in *Moran*.[53]

---

[48] *Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1072 (Del. Ch. 1985).

[49] *Id.* (emphasis added).

[50] 698 A.2d 380 (Del. Ch. 1997).

[51] *Id.* at 384.

[52] 723 A.2d 1180 (Del. Ch. 1998).

[53] *Id.* at 1188; *see also Leonard Loventhal Account v. Hilton Hotels Corp.*, 2000 WL 1528909, at *2-3, 10-11 (Del. Ch. Oct. 10, 2000) (finding declaratory relief claim challenging the statutory validity of a rights plan to be ripe).

Just recently, in *Pontiac General Employees Retirement System v. Ballantine*,[54] Vice Chancellor Laster found ripe for review a challenge to the implementation of a proxy put because of its "deterrent effect" on running a proxy contest. Discussing *Moran*, *KLM* and *Carmody*, he explained that "Delaware courts have consistently recognized that disputes are ripe when challenging defensive measures that have a substantial deterrent effect."[55] The Court thus found ripe for review whether "the board of directors breached its duties in a factually-specific manner by adopting this poison dead hand put arrangement."[56]

Here, notwithstanding plaintiffs' protestations to the contrary, the Similar Item provision cannot legitimately be characterized as a significant deterrent to the ability of Allergan's stockholders to exercise their franchise rights. This is made plain by the fact that Allergan's stockholders currently are engaged in a proxy fight for control of the Allergan board, one which will come to a head at the special meeting of stockholders scheduled for December 18 of this year. Valeant and Pershing Square may not have chosen plaintiffs' suggested proxy strategy, but the fact remains that they have not been deterred from seeking control of the board through a proxy contest.

---

[54] *Pontiac General Employees Retirement System v. Ballantine*, C.A. No. 9789-VCL at *72-77 (Del. Ch. Oct. 14, 2014) (TRANSCRIPT). On October 30, 2014, plaintiffs submitted this transcript ruling as a supplemental authority.

[55] *Id.* at 73.

[56] *Id.* at 75.

Plaintiffs cite for additional support the Court's decision last year in *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*[57]  In that case, Chief Justice Strine, then serving as Chancellor, did comment in passing that plaintiffs' challenges to the facial validity of a forum selection bylaw that two companies had adopted were "ripe legal issues."[58]  More relevantly for present purposes, however, the Chief Justice cautioned against addressing hypothetical questions of the type raised here.  Specifically, in reaction to "an array of purely hypothetical situations" the plaintiffs had "conjured up" in attacking the statutory validity of the forum bylaws, the Chief Justice stated that "it would be imprudent and inappropriate to address these hypotheticals in the absence of a genuine controversy with concrete facts.  Delaware courts 'typically decline to decide issues that may not have to be decided or that create hypothetical harm.'"[59]

In my view, this case presents an appropriate circumstance to exercise such caution.  As discussed above, plaintiffs' request for declaratory relief amounts to a hypothetical proxy strategy based on the language of a specific bylaw.  The claim does not implicate issues of statutory validity, the need to resolve the claim may never arise and hardly appears inevitable, and it is indisputable that Allergan's stockholders have not been deterred from pursuing a proxy contest, albeit through a different strategy.  Given these circumstances, and taking into account the strong policy considerations against

---

[57] 73 A.3d 934 (Del. Ch. 2013).

[58] *Id*. at 946.

[59] *Id*. at 940 (quoting 3 Stephen A. Radin, *The Business Judgment Rule: Fiduciary Duties of Corporate Officers* 3498 (6th ed. 2009) (discussing suits over bylaws)).

issuing advisory opinions, it would be improvident in my view to use scarce judicial resources to opine on the hypothetical question posed by plaintiffs' claim for declaratory relief. Accordingly, plaintiffs' motion for summary judgment on Count I of the consolidated complaint is denied for lack of ripeness.

## B. Count II: Breach of Fiduciary Duty

Count II of the consolidated complaint asserts that the Allergan directors breached their fiduciary "duty of candor" by disseminating false information when they issued a Supplemental Proxy interpreting the Similar Item provision to mean "that stockholders would not have the right to *replace* removed directors at a special meeting."[60] Unlike Count I, this claim is ripe for review in my view because it involves an historical event and thus the facts should be in a sufficiently concrete form to permit judicial review. Plaintiffs, however, have failed to present a factual record concerning those facts that would warrant entry of a judgment that Allergan's directors breached a fiduciary duty.

Plaintiffs filed their motion for partial summary judgment as a preemptive strike, before deposing any member of Allergan's board of directors or taking any other discovery concerning the circumstances surrounding the issuance of the Supplemental Proxy. In their initial briefing, in fact, plaintiffs barely mentioned Count II and suggested that, if their interpretation of the Similar Item provision were correct purely as a matter of contract construction, the Court should automatically enter a judgment that the directors

---

[60] Consol. Compl. ¶ 133.

breached a fiduciary duty, as if the standard was one of strict liability. Having considered the matter, with the benefit of supplemental briefing, I decline to adopt this approach.

In *Malone v. Brincat*,[61] the Delaware Supreme Court explained that directors owe a duty not to speak falsely:

> Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty. It follows *a fortiori* that when directors communicate publicly or directly with shareholders about corporate matters the *sine qua non* of directors' fiduciary duty to shareholders is honesty.[62]

The Supreme Court further explained that "[d]irectors who **knowingly** disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances."[63]

Although Count II is captioned in the consolidated complaint as a claim for breach of the "fiduciary duty of candor," there is no independent duty of disclosure under Delaware law. Instead, the duty of disclosure derives from the duty of care and the duty of loyalty. As Vice Chancellor Laster recently explained:

> Directors of a Delaware corporation owe two fiduciary duties: care and loyalty. The "duty of disclosure is not an independent duty, but derives from the duties of care and loyalty." The duty of disclosure arises because of "the application in a specific context of the board's fiduciary duties . . . ." Its scope and requirements depend on context; the duty "does not exist in a

---

[61] 722 A.2d 5 (Del. 1998).

[62] *Id.* at 10.

[63] *Id.* at 9 (emphasis added).

21

vacuum." When confronting a disclosure claim, a court therefore must engage in a contextual specific analysis to determine the source of the duty, its requirements, and any remedies for breach. [64]

Here, plaintiffs did not seek preliminary relief concerning the disclosures in the Supplemental Proxy in advance of Allergan's 2014 annual stockholder meeting, which would have entailed a probabilistic assessment of the merits of their claims, typically for the purpose of obtaining additional or corrective disclosures under threat that the stockholder vote otherwise would be enjoined. Instead, plaintiffs seek entry, after the fact, of a final judgment that the Allergan board breached its fiduciary duties in connection with the issuance of the Supplemental Proxy. As such, plaintiffs bear the burden in my view to put forward evidence demonstrating that the issuance of the Supplemental Proxy was, in fact, the product of a breach of the fiduciary duty of care and/or loyalty.[65]

Plaintiffs, however, have not put forth a factual record concerning the circumstances surrounding the issuance of the Supplemental Proxy from which the Court could reach such a conclusion. Plaintiffs have not provided facts, for example, demonstrating that the Allergan board acted in a grossly negligent manner such as to sustain a duty of care claim or knowingly made a false statement such as to sustain a duty

---

[64] *In re Wayport, Inc. Litig.*, 76 A.3d 296, 314 (Del. Ch. 2013) (internal citations omitted).

[65] Because plaintiffs seek equitable and not monetary relief in Count II, an exculpatory Section 102(b)(7) provision would not bar the granting of relief. Consol. Compl. ¶ 135 ("Plaintiffs request an order requiring Defendants to promptly disseminate public disclosures sufficient to correct the false statements Defendants have made, and to fully and fairly advise Allergan's stockholders of their rights.").

of loyalty claim. Given the absence of any such evidence, plaintiffs have failed to make the requisite showing to establish that the Allergan board breached a fiduciary duty in connection with the issuance of the Supplemental Proxy. For this reason, plaintiffs' motion for summary judgment with respect to Count II is denied.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment as to Counts I and II of the consolidated complaint is denied.

IT IS SO ORDERED.